**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-14162-MC-CANNON/MAYNARD**

**WENDY'S NETHERLANDS B.V.,**

      **Movant,**

**v.**

**HEATHER LEVY,**

      **Respondent.**

_____/

## <u>REPORT AND RECOMMENDATION ON EXPEDITED MOTION TO COMPEL COMPLIANCE WITH NONPARTY SUBPOENA AND RELATED MOTIONS FOR PROTECTIVE ORDER</u>

**THIS CAUSE** is before me upon Movant's Expedited Motion to Compel Heather Levy's Compliance with Subpoena ("Motion to Compel").  DE 1.  Respondent has filed a response in opposition, DE 10, and Movant has replied, DE 14.  Presiding U.S. District Judge Aileen M. Cannon has referred the Motion to Compel to me for expedited review and recommendation.  DE 5.  Following that referral, Respondent filed two motions for protective order, DE 11, DE 12, which were also referred for review and recommendation, DE 13.  Movant has responded in opposition to these additional motions.  DE 16, DE 17.

Upon expedited review, and for the reasons set forth below, I respectfully recommend that the Motion to Compel be **GRANTED IN PART AND DENIED IN PART,** and that the related Motions for Protective Order likewise be **GRANTED IN PART AND DENIED IN PART**.

### <u>BACKGROUND</u>

This discovery dispute arises from underlying litigation pending in the United States District Court for the Southern District of Ohio between Movant Wendy's International, LLC ("Wendy's")

and Andrew Levy ("Mr. Levy").  *See Wendy's Netherlands B.V. v. Levy*, Case No. 24-3077-Civ-Watson/Jolson (S.D. Ohio).

The Ohio action involves credit agreements executed in approximately 2015 and 2017, pursuant to which Wendy's loaned funds to non-party entity WBR Franquais Participacoies LTDA related to Wendy's franchise operations in Brazil [Ohio DE 5].[1]  Mr. Levy and his company, Starboard International Holdings B.V. ("Starboard"), guaranteed these business loans [*Id.*].  On February 23, 2020, Wendy's, Mr. Levy, and Starboard executed a cognovit promissory note reflecting an outstanding principal sum of approximately $5.5 million [Ohio DE 3-4].  Although Mr. Levy initially made payments, he later defaulted, and Wendy's obtained a state-court cognovit judgment against him [Ohio DE 1-4 at 59].

On June 3, 2024, the matter was removed to federal court in Ohio ("Ohio Court") [Ohio DE 1].  Following an evidentiary hearing, on July 21, 2025, the Ohio Court vacated the state-court cognovit judgment after concluding that Mr. Levy had established a potentially meritorious economic duress defense [Ohio DE 44 at 13].  The federal case thereafter proceeded on Wendy's enforcement claim and Mr. Levy's asserted economic duress defense [Ohio DE 45].

On November 4, 2025, the Ohio Court entered a scheduling order setting a discovery cutoff of March 11, 2026, later extended to May 11, 2026 [Ohio DE 63, Ohio DE 84].  The Ohio action is nearing the close of discovery, and the parties were very recently granted a limited extension of time,

---

[1] Citations to docket entries in the Ohio litigation will appear in brackets as follows: "[Ohio DE ___]").  Citations to docket entries in the instant action will appear without brackets.

through May 29, 2026, to complete the deposition of Mrs. Levy and three other individuals [Ohio DE 115].[2]

A review of the Ohio docket reveals that the Ohio Magistrate Judge has actively managed discovery, including through regular status conferences and court-ordered status reports, demonstrating ongoing judicial oversight of discovery disputes.  One recent status report, filed May 11, 2026, discusses alleged deficient production of document discovery by both parties, Mrs. Levy's objection to producing documents (with a note that Wendy's would be moving to compel her compliance in this judicial district), deposition scheduling issues, and concerns regarding settlement efforts [Ohio DE 107].  A subsequent Order, issued May 21, 2026, requires the parties to confer meaningfully on alleged deficiencies in Mr. Levy's financial document production and set briefing deadlines in early June for any motion to compel relating to this dispute [Ohio DE 111].  The most recent joint status report, filed May 26, 2026, discusses the parties' ongoing conferral regarding alleged deficiencies in Wendy's document production [Ohio DE 116].[3]

---

[2] This Order states as follows:

> NOTATION ORDER – Defendant's Motion for Extension of Discovery Deadline is GRANTED in part. (Doc. 109 ). Defendant seeks an extension to the discovery deadline for five depositions. The parties agree on an extension for all depositions except Marcos Silva's. The parties may have until 5/29/26 to complete the depositions of Carlos Ribas, Andrew Levy, Kris Kaffenbarger, and Heather Levy. The parties are ORDERED to confer meaningfully on the issue of Marcos Silva's deposition and file a joint status report on any remaining dispute on or before 6/1/26. Signed by Magistrate Judge Kimberly A. Jolson on 5/26/26.

[Ohio DE 115].

[3] The Ohio docket includes numerous filings.  The documents below, set forth in chronological order, are the most pertinent to the issues before this Court and are attached as exhibits to this report for ease of reference:
1. The February 23, 2020 cognovit note [Ohio DE 3-4];
2. The July 21, 2025 order vacating the state-court cognovit judgment following an evidentiary hearing [Ohio DE 44];
3. The August 5, 2025 joint status report submitted by the parties [Ohio DE 45];
4. The November 4, 2025 scheduling order establishing discovery deadlines and governing case management [Ohio DE 63];
5. The April 7, 2026 order memorializing status conference [Ohio DE 93];
6. The May 11, 2026 joint status report submitted by the parties [Ohio DE 107];
7. The May 21, 2026 order [Ohio DE 111]; and
8. The May 26, 2026 joint status report submitted by the parties [Ohio DE 116].

Relevant here, on April 2, 2026, Wendy's served a subpoena on non-party Heather Levy ("Mrs. Levy"), who is Mr. Levy's wife and a Florida resident.  The subpoena requests production of the following financial and asset-related information by April 16, 2026, in advance of Mrs. Levy's deposition:

1. Produce all documents evidencing or reflecting any financial pressure, coercion, or duress allegedly exerted upon You or the Defendant in connection with the Cognovit Note, including any documents reflecting discussions between you and the Defendant concerning the Cognovit Note, Duress Defense or Guarantee.

2. Any and all profit and loss statements relating to any business that you owned or co-owned from February 23, 2018, to February 23, 2021.

3. Any documents evidencing any income You received from February 23, 2018 to February 23, 2021, including all individual and joint federal and foreign income tax returns, including all schedules, attachments, W-2s, 1099s, and K-1s, filed by you or on your behalf, or any company in which you own any interest, for tax years 2019, 2020, and 2021.

4. Produce all documents reflecting your and your husband's net worth, including joint and individual bank account statements, personal financial statements, balance sheets, statement of assets and liabilities, and brokerage account statements, including checking, savings, money market, and certificate of deposit accounts, for any account in which you held an interest, individually or jointly with any other person, from February 23, 2018 to February 23, 2021.

5. Produce all documents evidencing any interest you hold or held in real property or other assets or investments, from February 23, 2018 to February 23, 2021.

6. Produce all documents reflecting any debts, liabilities, or financial obligations owed by you, individually or jointly with the Defendant or any other person, including credit card statements from February 23, 2018 to February 23, 2021, including but not limited to loan agreements, promissory notes, credit card statements, and lines of credit.

DE 1-5.

After this subpoena was served on Mrs. Levy, on April 7, 2026, the Ohio Court issued a brief order following a telephonic hearing memorializing its finding that "Plaintiff [Wendy's] is entitled to reasonable discovery on Defendant's [Mr. Levy's] financial asset information" [Ohio DE 93].

In response to the subpoena, Mrs. Levy did not object to appearing for deposition.  She did, however, object to the document requests.  *Id.*  On April 16, 2026, Mrs. Levy served her written objections asserting overbreadth, undue burden, lack of relevance, proportionality concerns, and marital privilege.  DE 1-5.  Mrs. Levy emphasized that she is not a party to the Ohio litigation, did not execute or guarantee the cognovit note, and bears no alleged liability in the underlying action.  She further noted that Wendy's already possesses certain joint financial records, including joint tax returns.

On May 12, 2026, Wendy's filed the instant Motion to Compel seeking to compel Mrs. Levy's compliance with the subpoena.  After the Motion to Compel was referred, I set an expedited briefing schedule.  In her response, Mrs. Levy renews her objections and argues that the subpoena seeks expansive and untethered financial discovery into the affairs of a non-party spouse.  On May 13, 2026, Mrs. Levy separately filed two motions for protective order relating to the subpoena served on her and a separate subpoena served on her Florida accounting firm.

### LEGAL STANDARDS

"For purposes of discovery, a party may subpoena information from a non-party to litigation." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020).  "Rule 45 is the proper vehicle for obtaining documents and other materials from non-parties relevant to a pending lawsuit." *Rose v. T-Mobile USA, Inc. T-Mobile USA, Inc.*, 2024 WL 3103662, *2 (M.D. Fla. June 24, 2024); *see also in re Guriev*, 2025 WL 3280355, at *2 (S.D. Fla. Nov. 25, 2025).  Rule 45 "must be read in conjunction with Rule 26," which "clearly defines the scope of discovery for all discovery devices." *Rose,* 2024 WL 3103662, *2.

Under Rule 26, parties may obtain discovery regarding nonprivileged matters relevant to a party's claim or defense and proportional to the needs of the case considering, among other things, the importance of the issues, the parties' relative access to information, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The burden is on the party seeking to enforce a subpoena to establish the relevance and proportionality of the information sought. *See Nat'l Staffing Sols., Inc. v. Sanchez*, 2022 WL 19354640, at *2 (M.D. Fla. Sept. 12, 2022). That burden carries particular significance where discovery is sought from a non-party. Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and "[t]he status of a person as a non-party is a factor that weighs against disclosure." *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007) (citing *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

Rule 45 further permits non-parties to serve written objections and to seek protection from subpoenas that impose undue burden, require disclosure of privileged or protected matter, or exceed the permissible scope of discovery. *See* Fed. R. Civ. P. 45(d)(2)(B), (d)(3)(A); *Tropical Mktg. & Consulting, LLC. v. Glock, Inc.*, 2012 WL 5431002, at *2 (M.D. Fla. Nov. 7, 2012). Rule 45 "provides several potential grounds for quashing [a third-party] subpoena: some of them mandatory and some discretionary. Among the mandatory grounds, a subpoena must be quashed if it requires disclosure of 'privileged or other protected matter[, if no exception or waiver applies]' or if the subpoena 'subjects a person to undue burden.'" *Jordan*, 947 F.3d at 1335 (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv)).

## **ANALYSIS**

Rule 45 requires careful balancing between the broad scope of permissible discovery and the burden imposed on a subpoenaed non-party. That balance is particularly important here, where Wendy's seeks financial discovery from a non-party spouse in litigation at or near the close of

discovery in another district court.  For the reasons discussed below, I conclude that Wendy's has shown sufficient relevance to justify discovery into the Levys' jointly held financial affairs during the relevant period.  By contrast, Wendy's has not met its burden to justify discovery into financial assets owned solely by Mrs. Levy, a non-party against whom no liability is asserted.  The subpoena as drafted is overbroad and seeks categories of financial information that exceed what Rule 26 permits on the current record.

### 1.      Sufficiency of Mrs. Levy's Objections

As a threshold matter, I reject Wendy's characterization of Mrs. Levy's objections as "boilerplate."  DE 1 at 3.  Mrs. Levy timely served written objections specifically directed to each category of requested documents.   DE 1-5.  Those objections expressly raise relevance, proportionality, undue burden, overbreadth, and privilege concerns, and explain the basis for each objection, including Mrs. Levy's non-party status and lack of involvement in the cognovit note.  DE 1-5.

The objections are not generalized or formulaic.  For example, Request No. 1 seeks documents concerning communications between Mr. and Mrs. Levy regarding the cognovit note and alleged financial pressure surrounding its execution.  Mrs. Levy responded with specific objections grounded in relevance, proportionality, overbreadth, vagueness, and marital privilege, explaining the basis for each objection. Likewise, Requests Nos. 2 through 6 seek expansive categories of financial records—including tax records, net-worth information, account statements, investment records, and debt obligations—spanning multiple years from an individual who is neither a signatory, guarantor, borrower, nor judgment debtor in the underlying litigation.

The objections are sufficiently specific to preserve the issues before the Court and frame the parties' dispute.   Accordingly, I find that Mrs. Levy preserved her challenges to the subpoena and that the objections permit meaningful judicial review of the disputed requests.

### 2.     Relevance, Overbreadth, and Proportionality Objections

Wendy's has demonstrated sufficient relevance to justify financial discovery concerning jointly held marital finances. As drafted, however, the subpoena sweeps more broadly than relevance and proportionality permit.

Following vacatur of the cognovit judgment, [Ohio DE 44], the Ohio action now proceeds on Wendy's enforcement claim and Mr. Levy's economic duress defense [Ohio DE 45].  As the Ohio court explained, economic duress under Ohio law requires, among other things, a showing that the circumstances left the party with "no other alternative."  [Ohio DE 44 at 11–12] (citing *Blodgett v. Blodgett*, 551 N.E.2d 1249, 1251 (Ohio 1990)).  By affirmatively asserting economic duress and a lack of reasonable financial alternatives, Mr. Levy has placed aspects of his financial condition during the relevant period directly at issue, including jointly held marital finances bearing on his available resources, assets, indebtedness, and access to alternative means of payment or financing.

That does not entitle Wendy's to unlimited discovery into all aspects of Mrs. Levy's personal finances.  Mrs. Levy remains a non-party to the Ohio litigation.  She did not execute the cognovit note, did not guarantee the underlying obligations, and bears no alleged liability in the underlying case.  The issue is not whether Mrs. Levy's individual finances could theoretically bear on the Levys' overall household circumstances.  They may.  The issue is whether Rule 26 permits compelling a non-party spouse to disclose years of private financial records absent a particularized showing that those assets were available to Mr. Levy, jointly controlled by the Levys, or otherwise directly connected to the economic duress defense at issue in the Ohio case.  The present record supports discovery of jointly held assets, liabilities, accounts, and business interests.  It does not support the broader disclosure Wendy's seeks.

Request No. 2 illustrates the problem. That request seeks "**any and all** profit and loss statements relating to **any business**" that Mrs. Levy "owned or co-owned from February 23, 2018, to February 23, 2021." The request is substantially overbroad. Wendy's has not explained why profit-and-loss statements from businesses owned solely by Mrs. Levy, or by Mrs. Levy and others, are discoverable where Mr. Levy held no ownership interest. Wendy's appears to suggest that, because the Levys are married, one spouse's financial condition necessarily bears on the other's financial condition. But Wendy's cites no authority supporting that proposition.

In effect, Wendy's position appears to be that Mr. Levy could not have been under economic duress if his spouse independently possessed assets or financial resources. That contention is conclusory and unsupported on the present record.

In its Motion to Compel, Wendy's asserts that it "has significant reason to believe that Mr. Levy has transferred significant assets to his wife, and his business enterprise is extensively integrated with his wife." DE 1 at 3. But Wendy's offers limited evidentiary support for that sweeping assertion.

Wendy's also argues that the Levys' finances are highly integrated because they file joint tax returns and because Mrs. Levy allegedly manages related business entities. DE 1 at 5. To the extent Wendy's seeks evidence of integrated finances, discovery concerning jointly held assets, liabilities, accounts, entities, and joint tax returns addresses that concern. The current record, however, does not establish that Mrs. Levy manages entities in which Mr. Levy has an ownership interest or other involvement, nor does it otherwise justify discovery into assets held solely by her.

Wendy's principally relies on a single document: an October 2019 letter of intent signed by Mrs. Levy, in her capacity as manager of HL Investments, LLC, concerning the potential acquisition of three Wingstop restaurants in Orlando. DE 1-4. Wendy's argues that the document demonstrates Mrs. Levy's access to significant capital. DE 1 at 6. The October 2019 letter of intent may reasonably suggest that Mrs. Levy had access to substantial capital through HL Investments. Even assuming that

inference is correct, however, the document does not justify the broad disclosure of all financial records relating to assets or income belonging solely to Mrs. Levy.  At most, it supports limited inquiry into whether HL Investments was jointly owned, jointly controlled, or otherwise available to Mr. Levy.  It does not support wholesale discovery into every asset or account held solely by a non-party spouse.  Standing alone, the letter of intent does not justify compelled disclosure of years of Mrs. Levy's private financial records.

Wendy's also points to Montana Haze LLC, arguing that it demonstrates the Levys "own several entities together and have a history of shuffling assets among them."  DE 1 at 5.  According to Wendy's, Mrs. Levy and Mr. Levy were the sole members of Montana Haze LLC when it was formed in 2019; Mr. Levy later removed himself as a member in 2020, leaving Mrs. Levy as the sole member; and Mr. Levy subsequently caused approximately $1.55 million to be transferred from Starboard to Montana Haze through thirty-three transactions identifying Mr. Levy and Montana Haze as joint recipients.  *Id*.

These allegations likewise fall short of satisfying Wendy's burden.  To be sure, if the Levys jointly owned an entity during part or all of the relevant period, Wendy's is entitled to discovery concerning that entity's finances.  Montana Haze LLC, which the parties allegedly owned together in 2019, appears to fall within that category.  But evidence that the Levys may have shared ownership of one entity does not establish that Wendy's is entitled to discovery concerning every asset, account, investment, or business interest owned solely by Mrs. Levy. The allegations concerning Montana Haze, if substantiated, could support a reasonable inquiry into shared ownership interests, asset flows, and financial interrelationships between Mr. and Mrs. Levy.  Even accepting those allegations at face value for present purposes, however, they do not justify the expansive scope of discovery sought here.  Rather, they support the narrower categories of jointly held financial information identified below.

The relevance of shared ownership interests does not automatically extend to every asset, account, investment, or business venture maintained solely by Mrs. Levy.

Moreover, Wendy's has not submitted competent evidentiary support substantiating the alleged transactions, ownership interests, or financial arrangements involving Montana Haze beyond the assertions contained in its motion papers. Wendy's reply does not cure those deficiencies. The present evidentiary record is insufficient. On the record before me, Wendy's has not met its burden.

In sum, the current record does not establish that all assets or financial holdings maintained individually by Mrs. Levy are connected to the operative claims or defenses in the Ohio litigation. Rule 26 does not permit compelling a non-party spouse to disclose years of private financial records absent a particularized showing that those assets were available to Mr. Levy, jointly controlled by the Levys, or otherwise directly connected to the economic-duress defense. The present record supports discovery of jointly held assets, liabilities, accounts, and business interests; it does not support the broader disclosure Wendy's seeks. Compelling disclosure of Mrs. Levy's individually held assets on such a speculative showing exceeds the scope of discovery permitted by Rule 26.

I further find that the subpoena's temporal scope should be narrowed. Wendy's has agreed to limit financial discovery directed to Mr. Levy to the period from February 23, 2019, through December 31, 2020. DE 14 at 1-2. I find the same temporal limitation appropriate and proportional with respect to any financial discovery directed to Mrs. Levy.

Accordingly, I recommend that the Motion to Compel be granted only insofar as Mrs. Levy should be ordered to produce nonprivileged documents from February 23, 2019 through December 31, 2020 reflecting:

- jointly filed tax returns or jointly filed income-related documents;
- bank, brokerage, investment, or financial account records for jointly held accounts;
- net-worth statements or financial disclosures reflecting jointly held assets or liabilities;
- documents concerning jointly owned real estate, jointly held investments, or jointly owned assets;

- profit-and-loss statements, financial statements, or similar records for businesses jointly owned or co-owned by Mr. and Mrs. Levy;
- documents reflecting jointly incurred debts or liabilities, including jointly held loans, promissory notes, or credit obligations; and
- documents sufficient to show financial transfers involving Mr. Levy, Starboard, Mrs. Levy and/or any jointly owned entities or accounts during the relevant period.

I recommend that the Motion to Compel otherwise be denied to the extent it seeks financial records relating solely to assets or income pertaining to Mrs. Levy; financial records concerning unrelated business ventures owned exclusively by Mrs. Levy; or financial information outside the narrowed temporal limitation set forth above.

### 3.     Marital Privilege

As to marital privilege, Request No. 1 seeks documents concerning financial pressure, coercion, or duress on the Levys in connection with the cognovit note, and documents reflecting discussions between the Levys regarding the cognovit note and its underlying agreements. DE 1-5. Mrs. Levy asserts that the information sought is protected by Florida's marital communications privilege, codified in Florida Statutes § 90.504. DE 1-5 at 2.

The parties dispute whether Florida or Ohio law governs Mrs. Levy's assertion of privilege. Mrs. Levy contends that Florida law applies, while Wendy's relies on Ohio law. DE 10-2 at 2. While the subpoena issued out of Ohio and pertains to litigation pending there, compliance is required in Florida. DE 1-1. In civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Under this framework, Ohio law appears to supply the governing privilege principles. Other authority, however, has looked instead to the privilege law of the jurisdiction where compliance is required. *See Lamport v. Williams*, 2014 WL 12605141, at *2 n.2 (S.D. Fla. May 30, 2014) (applying Florida law to claim of privilege asserted by nonparty spouse in connection with Georgia litigation with a note that "[b]ecause the testimony and documents are sought in Florida, the Court applies Florida law").

The choice-of-law question need not be definitively resolved here because no material conflict exists between Florida and Ohio law as applied to the communications at issue. Florida law provides that "[a] spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between the spouses while they were husband and wife." *See* Fla. Stat. § 90.504(1). Courts applying Florida law have recognized that this privilege extends to discovery requests seeking the substance of private spousal communications. *See Sims v. BMW of N. Am. LLC*, 2023 WL 7386031, at *1 (M.D. Fla. Nov. 8, 2023) (applying Florida's spousal privilege to quash subpoenas seeking text messages between non-party mother and mother's non-party husband); *Tropical Mktg.*, 2012 WL 5431002, at *4.

The privilege, however, has limits. It does not categorically shield business records, financial documents, or business-related communications relating to shared business operations or financial affairs between spouses. *See DHA Corp. v. Hardy*, 2015 WL 3707378, at *2 (S.D. Fla. June 15, 2015) (evaluating Florida's marital privilege in context of non-party subpoena and finding that any business-related communications between spouses who were also business associates may not be shielded from discovery as privileged marital communications, "unless specific circumstances show the conversations to have been confidential in nature"); *Lamport v. Williams*, 2014 WL 12605141, at *3 (S.D. Fla. May 30, 2014) (non-party wife's knowledge of home office renovations were not shielded by marital privilege where wife's company was profiting from the renovations and evidence showed connection between at-issue funds involving her husband, the wife's company, and the home office renovations); *Talentscale, Inc. v. Aery Aviation, LLC*, 802 F. Supp. 3d 1370, 1379-80 (S.D. Fla. 2025) (permitting post-judgment discovery in aid of execution from "closely related" individuals and reasoning that the information sought could reveal facts concerning concealed assets and related financial dealings).

Ohio law is materially consistent.  It recognizes a privilege protecting confidential communications made between spouses during marriage, including communications that survive the marital relationship.  *See* Ohio Rev. Code Ann. § 2317.02(D).  And, as in Florida, the Ohio marital privilege is limited to communications made in confidence; it does not extend to exchanges made "in the presence or hearing of a third person" or whose nature or surrounding circumstances demonstrate that confidentiality was not intended, including communications arising in a business context or otherwise made outside marital confidence.  *See Honey Crest Acres, LLC v. Rice Drilling D, LLC*, 2025 WL 2341749, at \*11 (S.D. Ohio Aug. 13, 2025) (collecting authority addressing limits on Ohio's marital communications privilege and finding certain documents and communications between a plaintiff and his non-party wife regarding plaintiff's oil and gas operations not privileged because "nondisclosure isn't necessary to protect 'the happiness of the marital state'" which the privilege exists to protect).

Accordingly, under either Florida or Ohio law, the privilege protects only marital communications intended to remain confidential.  Thus, to the extent the subpoena seeks communications between the Levys about their financial affairs, financial pressure, or the cognovit note and underlying agreements, such communications fall within the scope of the marital privilege so long as they were intended to be confidential.  By contrast, responsive financial records, business records, or documents are not privileged merely because they involved spouses who were in business together.  The privilege does not categorically shield records relating to shared business operations or financial affairs.

Accordingly, I find that Mrs. Levy should not be compelled to disclose communications with her husband about their finances or the agreements at issue in this case which were intended to be confidential.   She is not entitled, however, to withhold non-confidential, responsive financial or business records merely based on her marital relationship with Mr. Levy.  To the extent Mrs. Levy

withholds responsive documents based on privilege, I recommend that she be required to produce an appropriate privilege log.[4]

### 4. Motions for Protective Order

#### A. Motion for Protective Order as to Mrs. Levy

Mrs. Levy's Motion for Protective Order, DE 11, seeks protection from the same subpoena discussed above. The parties' arguments pertaining to this motion overlap with their arguments on Wendy's Motion to Compel.

As discussed above, the record reflects only limited evidence of Mrs. Levy's involvement in, or connection to, the financial arrangements described by Wendy's, and Wendy's has not established a sufficient basis to justify the wholesale intrusion into non-party personal financial records that its requests contemplate. Instead, Mrs. Levy should be required to produce a limited subset of financial information pertaining to shared business ventures and related financial activities involving Mr. Levy. Accordingly, and for the reasons previously stated, I recommend that the Motion for Protective Order as to Mrs. Levy be granted in part and denied in part consistent with my recommended disposition of the Motion to Compel.

#### B. Motion for Protective Order as to Mrs. Levy's Accounting Firm in Florida

Mrs. Levy's separate Motion for Protective Order seeking protection from a subpoena served on her Florida accounting firm, Berkowitz Pollack Brant Advisors ("Berkowitz Subpoena"), DE 12,

---

[4] Rule 45 requires parties asserting privilege to "expressly make the claim" and provide sufficient information to permit assessment of the claim. Fed. R. Civ. P. 45(e)(2). While Rule 45 does not itself set forth a detailed privilege-log requirement in every instance, courts in the Eleventh Circuit routinely require non-parties to produce a privilege log identifying withheld materials with sufficient specificity to evaluate the asserted privilege once a claim is disputed. *See, e.g., DHA Corp.*, 2015 WL 3707378, at *3 (noting that non-party wife must prepare a privilege log to the extent she was withholding information responsive to subpoena as privileged marital communications); *Popcorned Planet, Inc. v. Lively*, 815 F.Supp.3d 1248 (M.D. Fla. 2025) (finding that a non-party YouTube channel operator's failure to produce a Rule 45-compliant privilege log after being ordered to do so constituted a waiver of the claimed privilege). Accordingly, while the assertion of privilege may initially be made through express invocation under Rule 45, further documentation in the form of a privilege log is generally required where the privilege claim is challenged or where the Court determines that additional detail is necessary to assess the applicability of the asserted protection. Such is the case here.

involves different considerations. Unlike the subpoena directed to Mrs. Levy, neither party has provided a copy of the Berkowitz Subpoena. The absence of the subpoena limits my ability to evaluate the precise wording and scope of the requests directed to the accounting firm. Nevertheless, based on the parties' descriptions, the subpoena appears directed toward substantially the same categories of financial information addressed above, and the same relevance, proportionality, privacy, and non-party burden concerns apply.

The parties' briefing raises arguments uniquely related to the Berkowitz Subpoena. Mrs. Levy argues that the Berkowitz Subpoena improperly seeks her private financial records protected by Florida's accountant-client privilege. DE 12. She asserts further that the Berkowitz Subpoena is overbroad, disproportionate, and seeks protected information. *Id.* On the other hand, Wendy's argues that the motion was improperly filed in the Fort Pierce Division rather than the Miami Division where compliance by the accounting firm is required and that accountant-client privilege does not preclude production of the requested materials. DE 17 at 1-4. Wendy's further argues that any privilege or privacy assertion is inapplicable or limited and requests affirmative relief in the form of an order compelling Mrs. Levy to execute the necessary authorization permitting the accounting firm to produce responsive, non-privileged financial records. *Id.* at 4-7.

On the limited record presented, and without the subpoena being provided for review, I cannot fully resolve the scope or propriety of the requests contained in the Berkowitz Subpoena or make a definitive determination regarding any asserted privilege. I can, however, resolve a narrower issue. Accountant-client privilege, where applicable, generally does not extend to underlying financial records maintained in the ordinary course of business. *See Socas v. Nw. Mut. Life Ins. Co.*, 2008 WL 619322, at *4 (S.D. Fla. Mar. 4, 2008) (the accountant-client privilege encompasses only those communications between a public accountant and its client made in rendering accounting services to the client such as audit workpapers, accountant-prepared financial records, and confidential

memoranda, but not non-privileged financial information transferred from client to accountant). Thus, to the extent Berkowitz maintains documents falling within the same categories of information that this report concludes are discoverable from Mrs. Levy directly—namely, jointly held assets, liabilities, accounts, business interests, transfers, and related financial records during the relevant period—a narrowly tailored authorization is appropriate to permit production of those categories of non-privileged records. Any authorization should be limited to those categories and should not authorize disclosure of purely personal or individually held financial information that falls outside the scope of discovery authorized herein.  In addition, the parties should be ordered to enter an appropriate confidentiality agreement governing the use of responsive records in this litigation.

To the extent the parties require a more definitive ruling on privilege or the scope of production, such determinations are premature on the present record and may be revisited, if necessary, upon submission of the Berkowitz Subpoena and an appropriate privilege log.

### RECOMMENDATION

Based on the foregoing, I respectfully **RECOMMEND** that:

1. Movant's Expedited Motion to Compel Compliance with Subpoena, DE 1, be **GRANTED IN PART AND DENIED IN PART** consistent with the limitations set forth herein;

2. Respondent Heather Levy shall produce nonprivileged responsive documents limited to the categories and temporal scope identified in this Report and Recommendation;

3. Respondent Heather Levy may withhold confidential marital communications protected under applicable marital-communications privilege but should be required to produce a privilege log for any withheld documents based upon asserted privilege;

4. Respondent's Motion for Protective Order as to Heather Levy, DE 11, be **GRANTED IN PART AND DENIED IN PART** consistent with the limitations, instructions, and protections set forth herein; and

5.   Respondent's Motion for Protective Order as to the Berkowitz Subpoena, DE 12, be **GRANTED IN PART AND DENIED IN PART** consistent with the limitations, instructions, and protections set forth herein; and subject to an order requiring Mrs. Levy to execute a narrowly tailored consent authorization as set forth above.

<u>**NOTICE OF RIGHT TO OBJECT AND**</u>
<u>**SHORTENED OBJECTIONS PERIOD**</u>

Given the expedited nature of the requested relief and to coincide with the swiftly approaching deadlines in the Ohio action, a prompt resolution is required.  As such, I find it necessary and appropriate to shorten the time for any objections pursuant to Southern District of Florida Magistrate Judge Rule 4(a).  Accordingly, **the parties shall have two (2) days from the date of being served with a copy of this Report and Recommendation within which to file written objections,** if any, with U.S. District Judge Aileen M. Cannon.  *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a). Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).  **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within one (1) day of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 27th day of May, 2026.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE